ENTERED ON DOCKET
4/7/00 PURSUANT
TO FRCP RULES 58 & 79a



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS CARTAGENA-CARRASQUILLO**<br>　　Petitioner<br><br>v.<br><br>**UNITED STATES OF AMERICA**<br>　　Respondent | Civil No. 96-1823 (CCC)<br><br>[Related to Criminal No. 92-162 (CC)] |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

On July 5, 1996, petitioner Luis Cartagena-Carrasquillo (hereinafter "Cartagena") filed a motion to vacate sentence under 28 U.S.C. § 2255 (**Docket No. 1**). Cartagena alleges that at his sentencing hearing: (1) the trial court erred in denying his request for a downward departure based on minimal participation in the offense; and (2) that his attorney rendered ineffective legal assistance by failing to object to certain statements within the presentence investigation report (**Docket No. 1**). The government replied and objected to petitioner's claim (**Docket No. 11**). Subsequently, petitioner responded to the government's reply (**Docket No. 14**).

For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the instant § 2255 petition be **DENIED**.

I.　　FACTUAL AND PROCEDURAL BACKGROUND

　　A. The Underlying Crime[1]

The evidence presented at trial reflected that, on June 11, 1992, a confidential informant for the Drug Enforcement Administration ("DEA") arranged to purchase two

---

[1] These facts are gleaned from the First Circuit's summary of the testimony presented at trial, as contained in *United States v. Cartagena-Carrasquillo*, 70 F.3d 706 (1st Cir. 1995).

AO 72A
(Rev.8/82)

kilograms of cocaine from Carlos Lugo-López (hereinafter "Lugo-López"), who was acting as an intermediary between the purchaser and the supplier. Later on, after verifying that the two (2) kilos of cocaine were available for delivery, the confidential informant, along with an undercover agent, then went to the home of Lugo-López, located in the area of Caguas, Puerto Rico. Once at the house, the CI encountered Cartagena, the petitioner herein, whom Lugo-López identified as the cocaine supplier, and another man named José Figueroa-García (hereinafter "Figueroa"). Thereafter, Cartagena opened up a tan bag and showed the confidential informant some kilos of cocaine. There was information and testimony by the confidential informant that while he, Cartagena, Lugo-López, and others were awaiting the alleged buyer (the undercover agent) to arrive, Cartagena had abandoned the premises to sell one kilogram of cocaine.[2]

In regards to the sale and purchase of the two kilos, the confidential informant told Lugo-López that the money for the cocaine would be paid by his partner, who could consummate the deal in San Juan. In reality, this was a ploy to lure Lugo-López and the others out of the house, to a place where it would be easier to arrest them. However, Lugo-López wanted to complete the transaction at his home. The discussions about the proper venue for the drug transaction continued for some time, and only ended when Cartagena became frustrated, and left the premises with Figueroa.

---

[2] This fact was subsequently corroborated by surveillance conducted by agents from Drug Enforcement Administration (Criminal No. 92-162(CC), Docket No. 274, p. 5).

Law enforcement agents shadowed the car, which was being driven by Figueroa. When Figueroa became aware that the police were following him, he took evasive action, and a car chase ensued. Ultimately the car stopped at a public housing project, where the two men fled on foot. When he exited the car, Cartagena was carrying the tan bag containing the cocaine. *Id.* at 709-710. However, when Cartagena was finally caught in another part of the housing project, he was not in possession of the bag. Agents later found the tan bag in a trash can located along the route that Cartagena had traveled. *Id.* at 710. The bag contained three kilograms of cocaine.

On June 17, 1992, Cartagena was indicted on a charge of possession with intent to distribute cocaine. The indictment alleged that the defendants had illegally possessed with intent to distribute approximately 3.3 kilograms of cocaine. (*See* Criminal Case No. 92-162(CC), Docket No. 1; Docket No. 174 p. 4; and PSI at pp. 1, 3.) A jury trial commenced on February 14, 1994, resulting in the conviction of Cartagena, and his co-defendants, on all counts.

**B. The Sentence**

Following the jury verdicts, the U.S. Probation Office conducted and prepared a presentence report (hereinafter "PSI") concerning Cartagena. In that document, the probation officer recounted the facts described above and described Cartagena's role as the cocaine supplier in the aborted drug transaction (PSI pp. 1-8). The probation officer calculated that, based on the quantity of drugs charged (3.3 kilos), under the sentencing guidelines the crime

AO 72A
(Rev.8/82)

Civil No. 99-1823(CCC)                                                            Page No. 4

committed by Cartegena had a base offense level of 28 (PSI p. 9).[3] The probation officer found no grounds for any increase or decrease of the base offense level (PSI pp. 9-10).

Cartagena's sentencing hearing was held before the Honorable Morton Brody, District Judge, on September 12, 1994 (Criminal Case No. 92-162(CC), Docket No. 274). At that time, the prosecutor requested that Cartagena receive a two-level increase of his offense level under the sentencing guidelines, inasmuch as the evidence available indicated that defendant possessed at least 4 kilos of cocaine. (Criminal Case No. 92-162, Docket No. 274, pp. 6-7). The prosecutor also argued and requested an additional two point adjustment, pursuant to § 3B1.1, because Cartagena had served as a supervisor and exercised managerial role over the aborted drug transaction (Criminal Case No. 92-162(CC), Docket No. 274, pp. 6-7). *See* 18 U.S.C.S. Appx. § 3B1.1 (organizer, leader, manager, or supervisor of at least one or two other co-participants in a criminal activity is subject to a two-level adjustment). The government's third request was for the Court to enhance the base offense level due to defendant's false testimony during trial, which the government argued amounted to perjury. The government argued that defendant's actions were geared to obstruct justice making such an adjustment warranted under § 3C1.1. Lastly, the high purity of the drugs seized, the government argued, called for a sentence at the higher end of the applicable guideline range.

---

[3] Under § 2D1.1, a base offense level of 28 applies to offenses involving transactions with at least 2 but less than 3.5 kilograms of cocaine.

In contrast, defense counsel requested at least a two-level downward adjustment, pursuant to § 3B1.2, arguing that Cartagena was no more than a minor participant in the crime (Criminal Case No. 92-162(CC), Docket No. 274, pp. 13-14); *See* 18 U.S.C.S. Appx. § 3B1.2 (defendant entitled to downward adjustment of offense level if he was "minimal participant in any criminal activity"). In support of this request, counsel argued, in part, that Lugo-López was the one who had "brought Mr. Cartagena into this transaction so I think he [Cartagena] is less culpable than Mr. Lugo and should be given at least a two point reduction as a [minor] participant" (Criminal Case No. 92-162(CC), Docket No. 274, p. 14).

Defense attorney proceeded then to refute the government's arguments in regards to defendant's alleged managerial role (Criminal No. 92-162(CC), Docket No. 274, pp. 9-11), clarified for the Court a mistake in the government's allocution in regards to the drug purity (Criminal No. 92-162(CC), Docket No. 274, pp. 12-13, 18, 22-23), the amount of drugs relevant to the base offense level computation (Criminal No. 92-192(CC), Docket No. 274, pp. 11-12), and petitioned the Court for a downward departure alleging that his client's conduct constituted an isolated event and averred behavior (Criminal No. 92-192(CC), Docket No. 274, pp. 15-16).

Thereafter, the trial court ruled as follows:

> The government asked [] for a two point increase for a managerial role noting that the defendant, Cartagena, told others what to do in this conspiracy. Frankly I think Mr. Cartagena is, if not the most culpable, certainly at the top of culpability in terms of this whole scenario but I don't view him as controlling

> others in terms of the managerial role. This was the court's opinion based on its recollection of the testimony that I, of course, heard. This was a loose knit group of individuals who each had their own agenda although some played a greater percentage in the activities than others and Mr. Cartagena certainly played a dominant if not managerial role so I don't concur with the request of government counsel in that regard and I am not going to increase the base offense level two points for a managerial role.
>
> By the same token, the other side of that mirror, the other side of that coin is the request by the defendant for a reduction . . . for a minor participant. I find this even more difficult to accept and I am going to deny the defendant's request for a reduction in the base offense level for being a minor participant. He certainly was not in the court's perception a minor participant.

(Criminal Case No. 92-162(CC), Docket No. 274, p. 14).

The sentencing court then proceeded to determine that from the evidence available, although he considered defendant to have been less than candid during trial, he had not obstructed justice. The downward adjustment based on defendant's "averred behavior" was also denied (Criminal Case No. 92-162(CC), Docket No. 274, pp. 22-24).

Thereafter, based on an offense level of 28, and on a criminal history category of I,[4] the trial court sentenced Cartagena to 95 months in prison. *See* 18 U.S.C.S. Appx. §5A (guideline range for offense level of 28 with a criminal history category of I is 78 to 97 months in prison).

---

[4] The absence of a criminal record placed Cartagena in criminal history category I. *See* 18 U.S.C.S. Appx. § 4A1.1, §5A.

### C. The Appeal

Cartagena, Lugo-López, and Figueroa all appealed their convictions to the First Circuit Court of Appeals. *United States v. Cartagena-Carrasquillo*, 70 F.3d 706 (1st Cir. 1995). On appeal, Cartagena argued that certain evidence was improperly admitted and that the evidence as a whole was insufficient to sustain his conviction, that the prosecutor's closing argument was improper, and that his conviction was obtained in violation of the constitutional prohibition against double jeopardy. *Id.* In addition, Figueroa appealed his prison sentence, claiming that he was entitled to a downward adjustment under § 3 B1.2 of the sentencing guidelines, due to his minor participation in the crime. *Id.* at 716. Finding that "[Figueroa] was not a minor participant," the First Circuit affirmed Figueroa's sentence. *Id.* Cartagena's sentence as that of Lugo-López were also affirmed.

## II. Conclusions of Law

### A. Legal Standard for § 2255 Claims

Section 2255 of United States Code Title 28 governs collateral attacks, rather than direct appeals, of sentences imposed in criminal cases. This statute provides, in pertinent part, that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. § 2255. While the statutory language of § 2255 is rather broad, the Supreme Court has narrowly confined the scope and availability of non-constitutional claims that are raised in a § 2255 motion. Such claims may only be raised where the claimed error presents "exceptional circumstances," and a "miscarriage of justice" will occur if remedial measures

AO 72A
(Rev.8/82)

are not taken. *Hill v. United States*, 368 U.S. 424, 428 (1962). The reason for this strict limitation is that "direct appeal provides criminal defendants with a regular and orderly avenue for correcting such errors" and that a § 2255 motion may not be used as a substitute for a direct appeal. *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

## B. Petitioner's Claims

### 1. Downward Departure based on Minimal Participation

Cartagena alleges that his only crime "was to drive a car for somebody else and [to flee] the car when he thought that a robbery was in progress" (**Docket No. 1**, Brief in Support of Motion to Vacate Sentence, p4). Therefore, Cartagena argues, he was a minor participant in the crime, making him eligible for a downward departure under §3B1.2 of the sentencing guidelines. We find that Cartagena's claim is procedurally barred.

In *Knight v. United States, supra*, the First Circuit Court of Appeals was faced with a claim that "the district court made an erroneous finding of fact which led to the misapplication of the sentencing guidelines." *Id.* at 773. The Court concluded that this claim was not based on an "exceptional circumstance", and that even if the claimed error had been committed, it would not have amounted to a "complete miscarriage of justice". *Id.* Thereafter, the First Circuit Court of Appeals stated as follows:

> Knight, moreover, who was fully aware of his right to appeal, could have raised the purported error by direct appeal . . . Knight does not allege that there have been any new legal or factual developments justifying his failure to appeal. Allowing Knight to bring his claim at this late date would essentially be

> allowing him to use §2255 as a substitute for appeal. (Citation omitted). Having bypassed his opportunity to raise the claim on direct appeal, he cannot raise it now on collateral attack. (Citations omitted).

*Id.*

This Court is now faced with almost identical circumstances. Here, Cartagena claims that, in finding that he was more than a minor participant in the aborted drug transaction, the trial court made an erroneous finding of fact, which led to the misapplication of the sentencing guidelines.[5] However, as shown above, Cartagena's claim of minor participation was raised, and rejected, at the sentencing hearing. Although he raised numerous allegations of error on direct appeal, Cartagena did not appeal this finding. *See United States v. Cartagena*, 70 F.3d 706 (1st Cir. 1995).

Like the *Knight* Court, we find that Cartagena's sentencing guideline claim is not based on an exceptional circumstance, and that even if the claimed error had been committed[6], it would not have amounted to a complete miscarriage of justice. Finally, we rule that, because

---

[5] It is worth noting that the trial court while denying defendant's request for a downward adjustment based on his "minor" role and participation, and even though it considered Cartagena as one of the most culpable, elected to deny as well the government's request for an upward adjustment based on defendant's alleged managerial or supervisor role (Criminal Case No. 92-162(CC), Docket No. 274, pp. 21-24).

[6] While we do not reach the merits of Cartagena's claim, we note that "[t]he determination of an individual's role in committing an offense is necessarily fact-specific", and that such a determination must be reviewed with considerable deference. *United States v. Cruz*, 120 F.3d 1, 3 (1st Cir. 1997); *United Sates v. Ticchiarelli*, 171 F.3d 24, 28 (1st Cir. 1999). A determination of this nature may be set aside only for clear error. *Id.* This Court has not observed, nor has Cartagena provided, any evidence suggesting that the trial court's finding was clearly erroneous.

Civil No. 99-1823(CCC)                                                                         Page No. 10

Cartagena declined to raise this claim on direct appeal, he cannot raise it now by means of a collateral attack.

More so, there is no reason to disturb the trial court's determination on the issue, inasmuch as it was the trial judge who was the one with ample and first hand knowledge of all the evidence presented at trial.

### 2. Ineffective Assistance of Counsel

Cartagena maintains that, by failing to object to the presentence report's characterization of him as a drug supplier, defense counsel provided ineffective legal assistance during the sentencing hearing (**Docket No. 1**, Brief in Support of Motion to Vacate, pp. 2-4). He argues that, if counsel had objected to this characterization, the trial court would have stricken the objectionable language, and would have granted a downward departure under § 3B1.2 of the sentencing guidelines, which ultimately would have led to the imposition of a lower sentence than he actually received (id.). We reject this claim.

The U.S. Supreme Court has set forth a two-prong test to determine whether a defendant has been denied a Sixth Amendment right to counsel. A conviction may be set aside because of ineffective assistance of counsel if: (a) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *accord*, *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982-83 (1st Cir.1989). The burden

is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1983). We find that Cartagena has failed to satisfy the *Strickland* test, because the record conclusively shows that, even if counsel had moved to correct the alleged misstatements contained in the presentence report, the result of the proceeding would not have been different.

Contrary to defendant's belated arguments, the record reflects that at the sentencing hearing, defense counsel moved for a downward adjustment of the offense level based on Cartagena's minimal participation in the crime (Criminal Case No. 92-162(CC), Docket No. 274, pp. 13-14). While doing so, he specifically objected to the government's characterization of his role as that of a manager or supervisor (Criminal Case No. 92-162(CC), Docket No. 274, pp. 9-16). In ruling on defendant's motion, the trial judge clearly stated that his perception of Cartagena's role in the aborted drug transaction was based on the testimony presented at trial, rather than on the presentence report, or any other document. Based on his assessment of this testimony, the sentencing judge stated that he found defense counsel's motion "difficult to accept", and ruled that Cartagena "certainly was not in the court's perception a minor participant" (Criminal Case No. 92-162(CC), **Docket No. 274**, p. 14). Under these circumstances it is clear that, even if counsel had moved to correct the alleged misstatements contained in the presentence report, the trial court would not have concluded that Cartagena was a minor participant in the crime, and would not have granted a downward departure under § 3B1.2 of the sentencing guidelines. More so, from

AO 72A
(Rev.8/82)

the arguments at sentencing, it is shown that while rebutting the government's request for defendant's characterization as a supervisor, counsel tried to minimize defendant's role or identification as a supplier. Therefore, no prejudice accrued to the defendant based on counsel's alleged misconduct, if any. *See Carsetti v. State of Maine*, 932 F.2d 1007, 1014 (1st Cir. 1991) (no prejudice accrued to defendant who failed to demonstrate "a reasonable probability that the result of the sentencing hearing would have been different if counsel had been prepared to deal properly with the details of petitioner's criminal history").

### III. CONCLUSION

After analyzing petitioner's allegations, we conclude that his § 2255 motion is meritless. Therefore, this Magistrate-Judge **RECOMMENDS** that petitioner's motion under § 2255 (**Docket No. 1**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 504.3 of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of its receipt. Rule 510.1, Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and

does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 31st day of March, 2000.

                                                                      AIDA M. DELGADO-COLON
                                                                      U.S. Magistrate-Judge

AO 72A
(Rev.8/82)